## WILEY & GAYLE v. WHITE & LESLEY, Admrs.

Three commissioners were appointed by the County Court, to sell land belonging to an estate; two only acted, and sold the land to W. who gave his note, payable to the administrators. The administrators failed to give bond as required by the statute for the proper application of the purchase money, the commissioners made no return of the sale, and no decree of the Court was rendered ordering titles to be made to W. nor for the delivery of the note to the administrators, and several years had elapsed. It was held—
1. That the purchaser could defend at law, although put in possession under the purchase, and not evicted.
2. That such defence was good under the general issue.

THE record in this cause shews, that in October, 1826, in Dallas Circuit Court, White & Lesley as administrators of E. Lane, commenced suit in assumpsit, to recover of T. H. Wiley, L. M. Wiley and T. W. Baxter, composing the firm of T. H. Wiley, & Co. and against M. Gayle, on a note for $ 910, made by them the 8th of October, 1824, payable twelve months after date, to the plaintiffs, as administrators of Lane's estate. The defendants pleaded: 1st. The general issue; 2d. That the note was given for a lot of land sold by White & Lesley, as administrators, to T. H. Wiley, and that the administrators before the sale, did not comply with the requisitions of the statute in such cases made. 3d. That the lot was sold under an order of the County Court, and that the administrators gave no bond with security for the faithful application of the money arising from the sale. 4th. That the administrators petitioned for and obtained an order from the County Court for the sale of the lot, that it was sold, but that they did not give bond and security for the proper application of the money, &c. and 5thly. That the lot was sold by the administrators, and no commissioners were ever appointed by the County Court to sell the lot. To these several pleas the plaintiffs demurred, and the demurrer was sustained.

On the trial at October term, 1827, under the general issue, the defendants proved, that the note sued on was given for land belonging to Lane in his lifetime; that the plaintiffs were his administrators, appointed in Dallas county; that the land was sold by commissioners as a part of Lane's real estate, under an order of the County Court. The defendants offered to prove further, that the plaintiffs never gave bond, either under the 30th section of the act

Wiley et. al.
v.
White & Les-
ley, Admrs.

of 1803, nor the 5th section of the act of 1822, nor under any other act authorizing such sales. That three commissioners, under the act of 1822, were appointed by the County Court to sell the lands belonging to said estate, only two of whom acted; that no report was made by the commissioners, nor either, to the County Court; that no decree was ever made by the County Court, directing a conveyance to be made of the land by the commissioners to the defendants, nor any order directing the note to be given up to the administrators; and that no such bonds, orders or decree are of record in the County Court. To this evidence the plaintiffs objected, on the ground, that Wiley, the purchaser had been put in possession under the sale, and that he was still in the uninterrupted possession of the premises, and by the Court the objection was sustained, and the evidence rejected. A verdict was found for the plaintiffs for $1058 66 on the note.

The defendants in the Court below, who are the appellants in this Court, assign for error, 1st, that the demurrers to their special pleas should have been overruled, and 2d, that the evidence they offered, should have been admitted.

*a* 8 Wheaton, 75-80. 11 John. 625. 4 Henn. & Munf. 444.

*b* Laws of Al. 328-347. 19 John. 6. 1 Caines' Cas. 26. 6 Wheat. 119. 4 Wheat 77. 9 Cranch, 64. 3 Cowen, 299-651. Paley's Philos. 149. 6 John. R. 39.

*c* 2 Kent's Com, 367. 1 Peter's R. 455-468. 11 John. 50. 19 John. 73. 10 John. 26. 14 John. 248. 6 John. 39. 2 Com. on Con. 52. 5 Littell, 247.

GORDON, for the plaintiffs in error, argued that the proceedings under which the land had been sold, were void, that the requisitions of the statutes had not been complied with, and that the title of the heirs was not divested, that Wiley had acquired no title either at law or in equity to the lot; *a* that all the commissioners should have joined to effect the sale; it being an authority specially delegated, which must be strictly pursued and executed by the identical persons intrusted with it, and by all of them, and none other or less number. *b* He further argued, that in this case the defence was proper and available at law; and that a purchaser was not bound to receive doubtful or bad titles of the vendor; that the vendors being unable to convey, the purchaser might rescind the contract, and avoid the note; else he would be purchasing a law suit, which he should not be reqired to do. *c*

THORINGTON, contra, contended that Wiley, the purchaser, being in the uninterrupted possession of the land, could not resist the payment of the price; that here the possession was valuable, and that the failure of consideration must be total in all cases where real estate is the sub-

ject of the contract, before a defence at law can be made; that the sale by the two commissioners was sufficient, but that had it not been, the objection came too late from the purchaser; that payment is a condition precedent to the vendee's right to a complete title, and that the vendor has the right to perfect the title, if defective, at any time before the actual eviction of the vendee, so as to maintain his contract, even were it shewn the title was defective; and that in all cases, before the contract can be set aside, the vendor must be placed in *statu quo.* [a]

HITCHCOCK, argued in reply. He insisted the sale by the commissioners was a nullity; that where several agents, executors or others, are authorised to do an act, all must join, else their act is void; [b] that the doctrine advanced on the other side did not apply to cases where the sale was made by an administrator; and that such a sale contained no warranty of title. [c]

By JUDGE CRENSHAW. In relation to the several special pleas, the Court are unanimous in the opinion that they were insufficiently pleaded, and that as far as they contain available matter, it might have been given in evidence under the general issue. There was consequently, no error in sustaining the demurrer.

The rejection of the evidence offered, is assigned for error. In the consideration of the case, it becomes material to inquire under what law or act of the legislature, the proceedings in the County Court directing a sale of the lands were instituted.

The act of 1803, contemplates the sale of lands by an administrator in *propia persona,* and authorizes him to make a conveyance to the purchaser in cases where the personal estate is insufficient for the payment of debts. The act of 1818 provides, that the County Court may order a sale of the land when it shall appear to be more beneficial to the estate than to sell slaves. Neither of these acts requires the County Court to appoint commissioners to sell the lands. The act of 1822 enacts, that the executor or administrator, where the personal estate is insufficient for the payment of debts, or when it becomes necessary for the purpose of equal distribution among the heirs or devisees, may petition the County Court for the sale of the real estate, and that in its order or decree, the Court shall appoint commissioners, with directions to sell

JANUARY 1830.

Wiley et. al.
v.
White & Lesley, Admrs.

a 2 Wheat. 13.
2 Littell, 247-71. Minor's
Alab. R. 165.
6 Cowen 13.
5 Cowen, 195.
2 Kent's
Com. 369-374. 5 East,
448. 3 Am.
Dig. 501.
Sug. on Ven.
345-7.

b 1 Coke 459.

c 1 Saund. R.
479. Sug. on
Vend. 156-8
521.

JANUARY 1830.
Wiley et al.
v.
White & Lesley, Admrs.

the estate, and to report to said Court within the time limited, in the order or decree; and that on the report of the commissioners, the Court shall render a final decree, directing them to convey the estate to the purchasers. This being the last act on the subject, and giving ample authority to the County Court to order a sale of the real estate of testators, and intestates, whenever it becomes necessary, either for the payment of debts, or for the purpose of equal distribution, and these also being cases of frequent and ordinary occurrence, it is fair to presume, that the proceedings in the County Court were had under the act of 1822. But the record itself furnishes satisfactory evidence, and shews clearly, that the proceedings were under the act of 1822. For it is stated in the bill of exceptions, that the defendants offered to prove commissioners were appointed to sell the lands; that they did not report to the Court, nor did the Court make any final decree directing them to convey to the purchaser. All of which are made necessary requisites by this act, but are required by no other act within my recollection.

Being satisfied then, that the proceedings in the County Court were instituted under the act of 1822, without inquiring whether former acts on the same subject are superseded by the provisions of this act, the next question arising is, was the evidence properly rejected?

I lay it down as incontrovertible, that the County Court is a Court of special and limited jurisdiction; that its authority to order or decree the sale of the real estate of testators and intestates, is not derived from the common law, but is created by statute, and to render the sale valid, all material requisitions of the statute must be complied with. In the case at bar, were all the material requisitions of the statute complied with? One very material requistion of the statute, as has been already shewn, is, that the commissioners shall make their report to the Court, on which the Court shall make its final decree, directing them to convey to the purchaser. In order to give effect to the proceedings of the Court, and reality to Wiley's title, this was essential, but which was not done, and the omission is fatal. Wiley's title therefore, was wholly defective and void, unless the omission can yet be supplied so as to complete it.

If the title can yet be made perfect, it must be either by the Court from which it is derived, or from the aid of a Court of equity. I apprehend that the County Court,

from which the title is derived, is incompetent to the task; because years have elapsed beyond a reasonable period of time since those proceedings were transacted in that Court, and it is now too late to call on the commissioners to make their report, or for the Court to make its final decree directing them to convey the land to the purchaser. The statute requires the commissioners to report to the Court within the time limited by the order of sale, and the Court connot now compel the commissioners to make their report, who in all probability, are dead. Nor can a Court of equity lend its aid, because the statute gave jurisdiction to the County Court, and that Court having first got possession of the subject of litigation, it was competent to a final decision, and to have caused sufficient titles to have been made to Wiley. The title, therefore, is totally defective and void.

Apart then, from the circumstance of Wiley's being put in possession under the sale, there was an entire failure of consideration; and if the consideration has totally failed, Wiley ought not to be compelled to pay the purchase money.

Wiley purchased the land, and not the possession, which formed no part of the consideration, and it was not incumbent on him in order to resist the payment of the money, to offer to place the vendor in *statu quo*, or to be evicted by a title paramount, when the title was totally defective, and there was an entire failure of consideration. It seems that this principle applies in cases only where there is a partial failure of consideration, or where it is possible for the vendor yet to make good the title, or when the vendor has covenanted for a good title with the vendee. But it can have no application where a bad title is derived through the medium of a Court of competent jurisdiction, and without a possibility of making that title good. If he has enjoyed the benefit of possession, he may be evicted by the rightful owner, and will be accountable for the rents and profits. I am further of opinion, that the administrator had no right to sue on the note before he had given bond, with security to the Court for the faithful application of the money arising from the sale, unless there had been a decree requiring the commissioners to make a conveyance to Wiley, the purchaser, which would pre-suppose the bond had been given.

For these reasons, the Court are unanimous in reversing the judgment and remanding the cause.

Judge TAYLOR presided below, and did not sit.