In the Matter of RED WAY CARTAGE COMPANY, INC., Debtor.

Stuart A. GOLD, Trustee, Plaintiff,

v.

Stanley KUBICKI and Bernice Kubicki, Defendants.

Bankruptcy No. 86–01191–B.
Adv. No. 87–0235–B.

United States Bankruptcy Court,
E.D. Michigan, S.D.

April 4, 1988.

Joseph A. Ahern, Stark & Reagan, Troy, Mich., for plaintiff/trustee.

Thomas J. Pereira, P.C., Farmington Hills, Mich., for defendants.

MEMORANDUM OPINION

GEORGE BRODY, Chief Judge.

The question presented is whether certain payments made by the debtor to the

defendant are protected by Section 547(c)(2) of the Bankruptcy Code.

On October 1, 1979, Redway Cartage Company (Redway) leased commercial real estate from Walter and Stanley Kubicki for a term of six years for the sum of $657,000 payable in monthly installments of $9,125 on the first day of each and every month for 72 months. As of November 14, 1984, Redway was in arrears on the lease payments in the amount of $104,000. On that date, Redway executed a promissory note payable to the Kubicki's for the amount in default. The note was payable in increments of $2,000 without interest on the 15th day of each month until the $104,000 was paid. Redway made twelve monthly payments in 1984, nine payments in 1985, and two payments in 1986, a payment on January 27, 1986 and a payment on February 19, 1986. On March 19, 1986, Redway filed a voluntary Chapter 11 petition in bankruptcy. The debtor continued in possession and continued to operate the business. On March 11, 1987, the debtor instituted an action to recover the $4,000 in payments made in 1986, contending that these payments were preferences by virtue of Section 547(b) of the Bankruptcy Code.

Section 547(b) of the Bankruptcy Code provides as follows:

(b) Except as provided by subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of the creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The defendants concede that the transfers were preferential within the meaning of Section 547(b). However, they contend that Section 547(c)(2) insulates the transfers from attack. Section 547(c) provides that a trustee may not avoid a preferential transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the

(C) transferee; and made according to ordinary business terms;

11 U.S.C. § 547(c)(2).

Section 547(c)(2), as initially enacted in 1978, provided that the trustee may not avoid a transfer

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

The purpose of the Section 547(c)(2) exception was

to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or creditors during the debtor's slide into bankruptcy. H.Rep.

No. 595, 95th Cong., 2d Sess. 373, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6329; *see also* S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5874.

The requirement that the payment had to be made not later than 45 days after the debt was incurred for the payment to be protected was included on the assumption that this period of time constituted a normal trade cycle. In 1984, Congress eliminated the 45–day requirement. It did so because experience after the enactment of Section 547(c)(2) apparently convinced Congress that, "The [45–day] limitation places undue burdens upon creditors who receive payment under business contracts providing for billing cycles greater than 45 days." S.Rep. No. 65, 98th Cong., 1st Sess. 60 (1983).

The elimination of the 45–day requirement may have, as Professor Countryman contends,

> create[d] a gaping hole in the preference policy by protecting every creditor who receives a payment otherwise avoidable under section 547(b) who can persuade the court that the debt was incurred and the payment was made "in the ordinary course of business or financial affairs" of the debtor and creditor and that the payment was made "according to ordinary business terms."

Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L. Rev. 713, 772 (1985). However, no matter how large a "gaping hole" may have been created by the 1984 amendment, it is not large enough for the challenged transfers to crawl through. A creditor who relies on Section 547(c)(2) to insulate a preferential payment from attack must still establish that the debt was incurred in the ordinary course of business or financial affairs of the debtor and the creditor, and that payment was made in the ordinary course of business or financial affairs of the debtor and creditor, and was made "according to ordinary business terms." The phrases "ordinary course of business or financial affairs" and "according to ordinary business terms" were not the subject of legislative debate, nor are the phrases defined in the Code. It is generally agreed, however, that the Section 547(c)(2) exception, both prior to and after the 1984 amendment, was intended to protect "transactions which, although they are technically credit transactions, are not intended to remain unpaid for a long time. In this sense, the 'normal payments' exception is a variant of the 'contemporaneous exchange' exception of § 547(c)(1)." *Barash v. Public Finance Corp.,* 658 F.2d 504, 511 (7th Cir.1981). *See also 4 Collier on Bankruptcy,* ¶ 547.10, p. 547–42 (15th ed. 1987). Thus, in determining whether the 547(c)(2) exception applies, "the policies behind section 547, and 547(c)(2) in particular, must be borne in mind." *In re Bourgeois,* 58 B.R. 657, 659–60 (Bankr.W.D.La.1986).

The defendants apparently contend that the $104,000 debt was incurred when the promissory note was issued, and since the payments were made in accordance with the schedule reflected in the note, the challenged payments are protected by Section 547(c)(2). This argument clearly has no merit. The $104,000 debt was incurred as a result of the failure to make the stipulated payments under the lease. The $104,000 debt was not incurred when the promissory note was executed. The promissory note merely provided documentary evidence of the amount of the antecedent debt and provided a timetable for the payment of that debt. Since the debt was incurred prior to November of 1984 and the challenged payments were not made until 1986, the payments were not made "in the ordinary course of business" or "according to ordinary business terms" within the meaning of Section 547(c)(2). Clearly, if the debtor had made the challenged payments without executing the promissory note and negotiating a payment schedule, Section 547(c)(2) would not serve as a defense to the trustee's action. The fact that the parties negotiated an agreement for the payment of the antecedent debt and made payments pursuant to that agreement does not bring the payments within the 547(c)(2) exception. "[P]ayments made pursuant to a settlement agreement, which appear to be

the result of an antecedent debt and prior dispute between the parties, are simply not in the ordinary course of business." *Carrier Corp. v. Mid Corp. (In re Daikin Miami Overseas, Inc.),* 14 B.R.Ct.Dec. (CRR) 994, 996, 65 B.R. 396, 398 (Bankr.S. D.Fla.1986). If Section 547(c)(2) were held to protect the challenged transfers, Section 547(b) would, in effect, be read out of the Code. Congress, when it eliminated the 45–day requirement, clearly did not so intend. Congress merely intended to limit recovery by the trustee of "only those payments which are true preferences." S.Rep. No. 65, 98th Cong., 1st Sess. 60 (1983). There is no more classic example of a "true preference" than the preference involved herein.

An appropriate order is to be submitted for entry.